855 So.2d 958 (2003)
STATE of Louisiana, Appellee,
v.
Timothy David TAYLOR, Appellant.
No. 37,356-KA.
Court of Appeals of Louisiana, Second Circuit.
September 26, 2003.
*960 Daryl Gold, Shreveport, for Appellant.
Don. M. Burkett, District Attorney, and H. Melissa Sugar, Assistant District Attorney, for Appellee.
Before CARAWAY, DREW and TRAYLOR (Pro Tempore), JJ.
CARAWAY, J.
A grand jury indictment charged the defendant with the January 7, 1999 first degree murder of an abducted victim in violation of La. R.S. 14:30. A jury found the defendant guilty of the charged offense and imposed a life sentence without benefit of parole, probation or suspension of sentence. Urging three assignments of error, the defendant claims that his conviction should be overturned. We affirm his conviction and sentence.

Facts
The facts and circumstances regarding the murder of the automobile salesman, Chester Howell, and the subsequent seven-state crime spree leading to the apprehension and arrest of Timothy Taylor ("Taylor") are set forth by the Louisiana Supreme Court in the case involving the accomplice, Michael Taylor. State v. Michael Taylor, 01-1638 (La.1/14/03), 838 So.2d 729. The crime in question began as a robbery/kidnaping of the victim and led to his murder in DeSoto Parish. Thereafter, in a seven-day time period, there were numerous crimes committed in other states leading ultimately to the arrest of defendant and Michael Taylor. Our review of the record in this case reveals that the same evidence of the murder and the other crimes were presented in this case as in State v. Taylor, supra, and we reference those facts of the companion case.

Discussion

Other Crimes Evidence
Prior to trial, the state notified Taylor of its intent to offer evidence of seven separate *961 crimes that constituted an integral part of Taylor's alleged crime spree. That evidence consisted of four acts of theft, a bank robbery in Lamoni, Iowa, the shooting of the Chief of Police of Lamoni, Iowa and an attempt to reenter the United States from Mexico while failing to declare $126,394.88. The defense and prosecution agreed to submit the matter on briefs.[1]
Following the hearing, the trial court deemed the other crimes evidence admissible, specifically finding that evidence to be "so intertwined with the commission of the charged offense that the State could not accurately present its case without reference to this evidence," and that the "probative value" of the evidence was not "outweighed by any danger of unfair prejudice...." Subsequently, Taylor filed a motion to reconsider the pre-trial ruling. Specifically, Taylor requested the court to revisit its determination relating to the evidence of the shooting of the police chief asserting that the prejudicial nature of that evidence far outweighed its probative value. On the grounds that there existed no such motion in law to reconsider its original ruling, the court summarily denied Taylor's motion.
On appeal, Taylor contends that the prejudicial effect of the testimony setting forth extensive details of the crime spree, specifically relating to the in-depth details of the bank robbery and the police chief's shooting, far outweighed the probative value of the evidence. Additionally, Taylor urges that the trial court erred in failing to allow him in his motion for reconsideration to specifically argue that the testimony regarding the details of the police chief's shooting was prejudicial.
Generally, evidence of other crimes is not admissible to show that the defendant is a man of bad character who has acted in conformity therewith. However, under La. C.E. art. 404(B)(1) evidence of other crimes, wrongs or acts may be introduced when it relates to conduct, formerly referred to as res gestae, that constitutes an integral part of the act or transaction that is the subject of the present proceedings. Res gestae events constituting other crimes evidence are deemed admissible because they are so nearly connected to the charged offense that the state could not accurately present its case without reference to them. A close proximity in time and location is required between the charged offense and the other crimes evidence to insure that the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. State v. Taylor, supra. The res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. Id. Res gestae evidence in Louisiana incorporates a rule of narrative completeness without which the state's case would lose its narrative momentum and cohesiveness, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. Id.
*962 Our review of the testimony and evidence presented by the state relating to the bank robbery and shooting of the police chief shows that it is substantially identical to that presented by the state in Taylor's co-defendant's trial in State v. Taylor, supra., p. 740-741 and fn. 6. In rejecting Michael Taylor's very similar claims[2] regarding the prejudicial nature of the evidence presented by the state, the court noted as follows:
[T]he prejudicial effect of the evidence admitted in the instant case does not substantially outweigh its probative value. Although all evidence of other crimes is prejudicial to defendant, the other crimes evidence was necessary to give the jury a complete picture of the events which gave rise to the instant offense and led to the defendant's ultimate arrest along with a context within which to evaluate defendant's assertions.... Furthermore, contrary to defendant's claims, the state cannot be faulted for the amount of other crimes evidence introduced at trial given defendant went on a crime spree which spanned seven states.

Taylor, supra at 745.
Such reasoning applies to the present matter as well and we adopt this analysis in rejecting Taylor's claim regarding the other crimes evidence. Moreover, we note that Taylor's appeal claims are directed toward the scope of the other crimes evidence in general rather than any specific portion of the evidence's presentation at trial. A review of the record shows that Taylor's counsel only once offered a contemporaneous objection at trial to the prejudicial nature of the scope of the subject testimony in accordance with La. C.E. art. 403. Specifically, the witness was attempting to describe the police chief's physical responses after the shooting. On that occasion, the trial court admonished the state to "watch out" for extraneous testimony. Upon that instruction, the state redirected the questioning. Otherwise, counsel offered no objection to the breadth of the remaining testimony relating to the bank robbery and shooting. That failure precludes Taylor from now complaining about the prejudicial nature of the testimony on appeal. La.C.Cr.P. art. 841.
Finally, Taylor's argument that the trial court was required to reconsider its prior ruling likewise has no merit. The trial court had entertained the Prieur[3] hearing pursuant to La.C.Cr.P. art. 720 and La. C.E. art. 404(B)(1), at which time it specifically weighed the prejudicial effect of the evidence under La. C.E. art. 403. Having afforded Taylor the hearing provided by law, it was within the trial court's discretion whether to reconsider its ruling on the admissibility of the other crimes evidence, and its decision to deny reconsideration presents no error.

Closing Statements
In his final argument Taylor contends that the trial court erred in failing to grant a mistrial based upon statements made by the assistant district attorney ("ADA") in closing argument. The ADA was discussing Taylor's confession which he gave to federal law enforcement after his arrest. The ADA stated:
What else do we know from Timothy's own statement? Michael's driving. Timothy's in the backseat with the gun and Michael elbows Tim. Tim takes this as a sign to pull out the gun. Timothy *963 is actively participating in this murder now, ladies and gentlemen. He pulled the gun out. Follower: Equal. Equal. Equal.
If all a person had to do when they're charged with murder is say I didn't do it. If they're charged as a principal, I didn't know my co-defendant was going to do it. If that's all they had to do, we wouldn't have a need for juries; we wouldn't have a need for courts.
At the time of this statement, the defense objected and made a motion for a mistrial, complaining that the prosecutor's argument was an indirect reference to the fact that the defendant did not testify. The trial court denied the motion.[4] No request for an admonition was made.
Afterwards, the prosecutor continued:
If all a person had to do was say I didn't know what the other person was gonna do, we wouldn't have a need for all of this. But that's why you're here. To make the decision whether Timothy Taylor's guilty of first degree murder.
On appeal, Taylor specifically argues that the statements suggest that a defendant must do more than plead not guilty and that the only inference the jury could draw from the prosecutor's comments is that Taylor was required to testify.
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the district attorney, during the trial or in argument, refers directly or indirectly to the failure of the defendant to testify in his own defense. La.C.Cr.P. art. 770(3). La.C.Cr.P. art. 770(3) protects the defendant's Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf. State v. Mitchell, 00-1399 (La.2/21/01), 779 So.2d 698.
When the prosecutor makes a direct reference to the defendant's failure to take the stand, a mistrial should be declared, and it is irrelevant whether the prosecutor intended for the jury to draw unfavorable inferences from defendant's silence. However, when the reference to the defendant's failure to take the stand is not direct, the court inquires into the remark's "intended effect on the jury" in order to distinguish indirect references to the defendant's failure to testify (which are impermissible) from statements that are not (which are permissible). State v. Johnson, 541 So.2d 818, 822 (La.1989). To support the granting of a mistrial, the inference must be plain that the remark was intended to focus the jury's attention on the defendant's not testifying. State v. Smith, 327 So.2d 355, 362 (La.1975); State v. Reed, 284 So.2d 574, 576 (La.1973).
When read in context, the ADA was attempting to deal with Taylor's defense that he had no specific intent to commit the crime and was merely a follower of Michael Taylor. The argument can be understood as explanation of the meaning of Taylor's role as a principal to the murder and as rebuttal of Taylor's attempt to shift responsibility for the act to Michael Taylor. While the ADA's comments can be questioned in that they give an obscure suggestion or inference regarding the defendant's failure to testify, the clear intended effect was to rebut the defense testimony that was presented at trial in support of Taylor's argument that Michael Taylor alone had the specific intent to *964 commit the murder. The record before us is insufficient to disclose the plain inference that the remarks were intended to focus the jury's attention on Taylor's failure to testify. Thus, we find no error in the trial court's refusal to grant a mistrial.

Conclusion
For the foregoing reasons, Taylor's sentence and conviction are affirmed.
AFFIRMED.
NOTES
[1] Notably, the record shows that Taylor submitted no brief in opposition to the state's memorandum in support of the admissibility of other crimes evidence and apparently first presented a written argument to the court in a motion to reconsider the ruling.
[2] There, Michael Taylor complained that the "massive evidentiary presentation" which detailed the week-long seven state crime spree "overwhelmed" the guilt phase of the trial and was unduly prejudicial to his case. Taylor, supra, pp. 740, 745.
[3] State v. Prieur, 277 So.2d 126 (1973).
[4] After trial, Taylor filed a written motion for mistrial on the same grounds which was denied by the trial court.